USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/7/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ANDREA WATERS and GEOFFREY WATERS, :
:
                     Plaintiffs,  :
:
          -against-  :      21-CV-7099 (VEC)
:
:      OPINION AND ORDER
THE UNITED STATES OF AMERICA,   :
:
                     Defendant.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

    Plaintiffs Andrea and Geoffrey Waters (collectively, "Plaintiffs") sued the United States of America ("Defendant" or the "Government") under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (the "FTCA"), alleging negligence, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and loss of consortium, after Ms. Waters was bitten by a Military Working Dog ("MWD"). *See* Compl., Dkt. 1.[1] The parties have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

    For the following reasons, Defendant's motion for summary judgment is GRANTED; and Plaintiffs' motion for summary judgment is DENIED.

## BACKGROUND[2]

    On the morning of February 19, 2020, Plaintiff Andrea Waters was visiting New York City on vacation when she rented a bike in Manhattan. 56.1 Stmt., Dkt. 61 ¶¶ 1, 15.[3] Ms.

---

[1]     Plaintiffs have exhausted administrative remedies — they first filed claims with the appropriate federal agency, but those claims were denied. *See* Compl., Dkt 1 ¶ 4; *see also* 28 U.S.C. § 2675(a).

[2]     All facts are undisputed unless otherwise stated.

[3]     References to the parties' Rule 56.1 Statement are to the consolidated version filed at docket entry 61.

Waters was riding the bike on Madison Avenue between East 55th and East 56th Streets; at that time, the U.S. Secret Service maintained a vehicle security checkpoint at the corner of Madison Ave and East 56th Street, which is near Trump Tower, the then-President's residence in Manhattan. *Id.* ¶¶ 3, 6. Stationed at the vehicle checkpoint were a MWD named Rosso ("Rosso") and his handler, Staff Sergeant Ian McKinney of the U.S. Air Force. *Id.* ¶ 4. Rosso is trained to detect explosives. *See id.* ¶ 43. McKinney, who had been Rosso's handler since August 2019, was inspecting the back of a truck at the security checkpoint when Ms. Waters cycled past the checkpoint and was bitten by Rosso. *Id.* ¶¶ 8–9, 36.[4] Ms. Waters was transported by ambulance to New York Presbyterian Hospital where she was diagnosed with superficial abrasions and released. *Id.* ¶¶ 11–13.

The February 2020 bite was not an isolated incident. In January 2020, shortly after McKinney and Rosso arrived in New York to begin their assignment, Rosso started to exhibit anxious behavior. *Id.* ¶¶ 67, 77, 89. McKinney informed his supervisor and certain on-duty Secret Service members of the dog's behavior, but no action was taken. *Id.* ¶¶ 90–94. Then, on January 28, 2020, Rosso, while on a leash held by McKinney, bit a different person at the same vehicle checkpoint during an inspection of a delivery truck. *Id.* ¶ 95. McKinney reported the bite to his supervisor that day, *id.* ¶ 108, but the Government continued to deploy Rosso at the Trump Tower security checkpoint, *id.* ¶ 110.

On August 23, 2021, Ms. Waters and her husband, Geoffrey Waters, sued the Government pursuant to the FTCA, alleging negligence, IIED, NIED, and, with respect to Mr.

---

[4] According to Plaintiffs, Rosso bit Ms. Waters twice. *See* 56.1 Stmt. ¶ 8.

Waters, loss of consortium.  *See* Compl.[5]  Plaintiffs seek compensatory damages and attorneys' fees.[6]  *See id.*  The parties have cross-moved for summary judgment.  *See* Gov. Mot., Dkt. 38; Pl. Mot., Dkt. 53.[7]

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).  To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Courts "construe the facts in the light most favorable to the nonmoving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam).

---

[5]     Plaintiffs also brought a fifth cause of action for a violation of N.Y. Agriculture and Market Law § 123; pursuant to a March 21, 2022 stipulation, that claim and Plaintiffs' claims premised on negligent training and negligent supervision were dismissed with prejudice.  *See* Stip. of Partial Dismissal, Dkt. 23.

[6]     Plaintiffs also seek an injunction directing Defendant to conduct training for service dogs and service dog handlers as well as an injunction requiring Defendant to cease and desist from using improperly trained animals, especially in urban areas.  Compl. at 61 ("Prayer for Relief" section).  Plaintiffs do not, however, argue for injunctive relief in their motion for summary judgment.  *See generally* Pl. Mem., Dkt. 55.  Even if Plaintiffs had maintained their cause of action for injunctive relief, the FTCA only authorizes actions for money damages.  *See Birnbaum v. United States*, 588 F.2d 319, 335 (2d Cir. 1978) (explaining that money damages are the "only form of relief" under the FTCA).  Accordingly, the Court dismisses with prejudice Plaintiffs' claim for injunctive relief.

[7]     Plaintiffs originally filed their motion for summary judgment at docket entry 46, but filed a "corrected," "text-searchable" filing at docket entry 53.  The Court will refer to Plaintiffs' so-called "corrected" filings when referring to their motion for summary judgment.

## II. Plaintiffs' Claims Are Not Actionable Under the FTCA

The FTCA operates to waive the sovereign immunity of the United States for claims for money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Although the United States has consented to suit for "negligent or wrongful act[s] or omission[s]," Congress excluded from the FTCA claims against the Government premised on strict or absolute liability. *See Devlin v. United States*, 352 F.3d 525, 533 (2d Cir. 2003) (citing *Laird v. Nelms*, 406 U.S. 797, 799 (1972)); *Moreno v. United States*, 965 F. Supp. 521, 526 (S.D.N.Y. 1997) (imposing strict liability on the Government would amount to "disregarding the central inquiry mandated by the FTCA: whether any Government employee is guilty of a negligent act or omission" (cleaned up)).

Because the United States is otherwise immune from suit, if the FTCA does not authorize Plaintiffs' claims, then the Court lacks subject matter jurisdiction over the case. *See Makarova v. United States*, 201 F.3d 110, 113–14 (2d Cir. 2000). To impose liability under the FTCA, a plaintiff must demonstrate the existence of a "private analogue" in the jurisdiction in which the tort occurred, a "requirement [that] asks 'whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred.'" *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) (quoting *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996)); *see also Vasquez v. United States*, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) ("In a case brought pursuant to the FTCA, substantive liability is determined by reference to 'the law of the place where the act or omission occurred.'"). Accordingly, because

4

Plaintiffs' injuries occurred in New York City, New York State law governs Plaintiffs' substantive negligence and related claims.

### A. Under New York Law, Owners Are Strictly Liable for Injuries Caused by Their Animals

Plaintiffs maintain that both McKinney (the MWD Handler) and Rosso (the MWD) were each independently negligent when Rosso bit Ms. Waters on February 19, 2020. *See* Pl. Mem. at 6, 17. The Government argues that Plaintiffs have no viable claim under the FTCA because New York courts uniformly recognize that dog-bite injuries sound only in strict liability — a theory of liability that is excluded from the scope of the FTCA. *See* Def. Mem. at 6–8, Dkt. 39. The Court agrees.

Under New York law, an animal owner cannot be held liable for injuries caused by the animal unless the owner knew or should have known of the animal's vicious or violent propensities. *Bard v. Jahnke*, 6 N.Y.3d 592, 596–97 (2006) (citing *Collier v. Zambito*, 1 N.Y.3d 444, 446 (2004)). "Once this knowledge is established, the owner faces strict liability." *Id.* at 597; *see also Petrone v. Fernandez*, 12 N.Y3d 546, 550 (2009) (finding violation of a local leash law "irrelevant because such a violation is only some evidence of negligence, and negligence is no longer a basis for imposing liability" for injuries caused by domestic animals (cleaned up)); *Bernstein v. Penny Whistle Toys, Inc.*, 834 N.Y.S.2d 173, 174 (1st Dep't 2007) (rejecting premises liability theory due to nearly 200-year-old rule that limits recovery for injuries attributable to a dog bite to strict liability), *aff'd sub nom. Bernstein ex rel. Bernstein v. Penny Whistle Toys, Inc.*, 10 N.Y.3d 787 (2008).

Plaintiffs do not dispute that the FTCA precludes strict liability actions. Nonetheless, Plaintiffs devote much of their briefing to the alleged negligence of McKinney, who Plaintiffs

5

argue was negligent in his handling of Rosso. Pl. Mem. at 6.[8] Even assuming that McKinney was negligent, Plaintiffs fail to identify any "private analogue" under New York law that would permit recovery under a negligence theory for injuries sustained from a dog bite. *See McGowan*, 825 F.3d at 125; *see also Makarova*, 201 F.3d 110, 114 (2d Cir. 2000) ("Under the FTCA, courts are bound to apply the law of the state . . . where the accident occurred.").

Plaintiffs insist, however, that the FTCA authorizes their cause of action because New York's "vicious propensity" law is "wholly inapplicable" to cases involving a military dog like Rosso. *See* Pl. Opp. at 9, Dkt. 43; *see also* Pl. Mem. at 17–18. In an attempt to distinguish this case from those arising out of injuries caused by animals, Plaintiffs argue that Ms. Waters was not attacked by a "household pet" owned by the Government but by a dog "that serve[s] . . . as a Military Service Member" and whose negligent acts can be imputed to the Government. *See* Pl. Opp. at 14, 17–18. Putting aside the incongruity of asserting that a dog, even one that is highly trained, can be "negligent," Plaintiffs stop short of identifying a single New York case that recognizes any legal distinction between service dogs and household pets, as would be required to bring their claim within the scope of the FTCA. *See Carter v. United States*, 494 F. App'x 148, 150 (2d Cir. 2012) (dismissing FTCA claim for failure to satisfy the private analogue requirement when "the New York Court of Appeals addressed facts and claims almost identical to those presented here and concluded that no cause of action existed"). And, although dogs' acute sense of smell and normally-obedient nature undoubtedly make them valuable public servants, that does not turn them into human public employees who are capable of being "negligent." Under the law, dogs are not employees; they are property. *See Sentell v. New*

---

[8] Plaintiffs' reliance on negligent supervision and training claims is perplexing considering the parties' joint stipulation to discontinue and dismiss Plaintiffs' claims for negligent training or supervision. *See* Stip. of Partial Dismissal, Dkt. 23; *supra* n.5.

*Orleans & C.R. Co.*, 166 U.S. 698, 706 (1897) ("It is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets."); *Mulally v. People*, 86 N.Y. 365, 367–68 (1881) (dogs constitute chattel as "they possess all the attributes of other personal property").

Plaintiffs further argue that their FTCA claim survives under the theory that the Government "created but failed to warn, fix, correct, remedy or remove" a dangerous condition, to wit: Rosso's problematic and anxious behavior — including his history of attacking bystanders without provocation — despite knowledge of its existence. *See* Pl. Opp. at 12–13 (collecting New York cases involving failure to warn of dangerous conditions); Pl. Mem. at 21. Plaintiffs' argument still fails. Harsh though it may be, New York courts have consistently refused to recognize causes of action, no matter how artful the pleading, that arise from an injury caused by a domestic animal, even when the injury, at bottom, was caused by the animal owner's negligence. *See, e.g.*, *Petrone*, 12 N.Y.3d at 550 ("[T]here is no such thing as negligence liability where harm done by domestic animals is concerned." (citation omitted)); *Bernstein*, 834 N.Y.S.2d at 174 (rejecting premises liability theory due to nearly 200-year-old rule that provides exclusive recovery for injuries attributable to a dog bite under a theory of strict liability). No matter how creatively Plaintiffs frame their case, their recovery is limited to strict liability under New York law.

Plaintiffs urge the Court to extend the exception articulated by the New York Court of Appeals in *Hastings*, which recognized an "enhanced duty of care" imposed on owners of farm animals, to owners of military dogs. Pl. Opp. at 22–23. In *Hastings*, the court recognized an exception to the normal rule to permit recovery "under ordinary tort-law principles" against an

7

animal owner when "a domestic animal . . . is negligently allowed to stray from the property on which the animal is kept." *Hastings v. Sauve*, 967 N.Y.3d 122, 125–26 (2013).

Plaintiffs' argument is not persuasive. *Hastings* made an explicit finding that the case before it, which involved a landowner whose cow caused injury after it had escaped the farm due to a dilapidated fence and wandered onto a public road, was "fundamentally distinct" from prior cases that involved "aggressive or threatening behavior by any animal." *Id.* at 125. Because Plaintiffs have made clear that Rosso was a "vicious attack dog" with violent propensities, they have confirmed that this case falls outside of *Hastings*' reach.[9] But the fundamental error in Plaintiffs' argument is that, as already discussed, this Court is constrained by New York law — it is up to the New York courts or its legislature to expand the *Hastings* exception to injuries caused by domestic animals. That *Hastings* expressly declined to "consider whether the same rule applies to dogs, cats or other household pets," *id.* at 126, reveals New York's reluctance to do so.

Plaintiffs insist that the "legislative intent" behind New York's longstanding strict-liability common-law rule "was not to allow trained . . . Military Working dogs like MWD Rosso, being negligently handled by its . . . trained MWD Handler like MWD Handler McKinney herein, to viciously attack and seriously injure residents of or visitors to the State and City of New York." Pl. Opp. at 14. The Court does not disagree that the law of New York is designed to protect people from vicious animals. It does so by imposing strict liability on the owner of a known vicious dog if the dog injures someone, even if the owner is not negligent.

---

[9] To be sure, New York has also recognized an exception to the strict-liability rule by permitting a negligence cause of action against a veterinary clinic that performed surgery on a dog and then permitted the dog to sit in the general waiting room despite being visibly agitated. *See Hewitt v. Palmer Veterinary Clinic, PC*, 35 N.Y.3d 541, 546 (2020). The Court recognized that, unlike "the owner of a domestic animal," the clinic did not require "the protection afforded by the vicious propensities notice requirement" and could, therefore, be liable for negligence. *Id.* at 549.

Plaintiffs' quarrel is not with New York law; their quarrel is that the United States has not waived sovereign immunity in these circumstances.

The Court is, however, bewildered by the fact that the Government kept Rosso at the Trump Tower assignment despite the dog's proven aggressive tendencies. The Government would be wise to retire Rosso from service in urban settings; had it done so after McKinney's fears became reality the first time, Ms. Waters would likely not be in federal court without a remedy. Regardless, no matter how severe *vel non* her injuries, nor how negligent the Government might have been, the Court remains bound by New York law.

In short, Plaintiffs' FTCA claim is dismissed for lack of subject matter jurisdiction.

### B. Plaintiffs' IIED and NIED Claims Also Fail

Plaintiffs' IIED and NIED claims fail for the same reason as their negligence claim: if the Government were a private citizen, it could only be held strictly liable for Plaintiffs' injuries. A cause of action for a dog bite under New York law lies only in strict liability; New York law does not recognize parallel negligent causes of action for injuries caused by animals under these circumstances. *See Hewitt*, 35 N.Y.3d at 548.

Even if that were not the case, "New York law explicitly bars recovery for negligent or intentional infliction of emotional distress when such claims are based on conduct that is 'embraced by a traditional tort remedy.'" *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 398 (S.D.N.Y. 2020) (quoting *Poulos v. City of New York*, 2015 WL 5707496, at *10 (S.D.N.Y. Sept. 29, 2015)). Because Ms. Waters alleges a traditional tort, albeit one that sounds in strict liability rather than negligence, she is barred from bringing similar torts as separate vehicles for recovery.

Plaintiffs' IIED and NIED causes of action are, therefore, likewise dismissed.

### III. Plaintiffs' Claim for Loss of Consortium Fails

Mr. Waters, Ms. Waters' husband, seeks damages for loss of consortium. *See* Compl. ¶¶ 155–161. In New York, a party may not maintain an independent claim for loss of consortium or services. *See Many v. Lossef*, 137 N.Y.S.3d 128, 133 (2d Dep't 2021) ("The cause of action alleging loss of consortium is derivative in nature." (citing *Sokoloff v. Schor*, 109 N.Y.S.3d 58 (2d Dep't 2019))); *see also Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 260 (E.D.N.Y. 2014) ("A claim for loss of consortium or services is a derivative action, and in the common law of New York, does not exist 'independent of the injured spouse's right to maintain an action for injuries sustained.'" (internal quotations omitted)).

Because this Court lacks subject matter jurisdiction over Plaintiffs' FTCA claim, Mr. Waters' claim fails along with it.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED. This case is DISMISSED.

The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

**Date: July 7, 2023**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**